T. R. ODER, J. W. BARROW AND HOPE SAPP, PLAINTIFFS IN
    ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN
    ERROR.

The defendants were playing a game of cards called "poker," upon
    a bench in a room adjoining a school-house; one of the parties
    had his hat under the bench with some "corn" and two
    dollars in silver in it, no betting was seen or heard by any
    witness, and a witness for the State stated that he thought
    the game was being played for "fun," and the defendants
    stated upon oath that the game was being played for amuse-
    ment, and that nothing whatever was bet on it; *Held*, that the
    evidence was not sufficient to show that the parties were
    gambling.

Writ of Error to the Circuit Court for Suwannee County.

The facts of the case are stated in the opinion.

*B. B. Blackwell*, for Plaintiffs in Error.

*The Attorney-General* for Defendant in Error.

MITCHELL, J.:   The plaintiffs in error were convicted for
gambling on the 12th day of February, 1890, and they
were each sentenced to imprisonment in the county jail for
the term of three months, and each to pay one-third of the
costs of the case, and the case is brought here upon writ
of error to the Circuit Court of Suwannee county.

There are several questions raised by the errors assigned,
but it is only necessary to consider one of the questions so
raised, and that is as to whether or not the verdict of guilty
is sustained by the evidence.

William Wells, a witness for the State, testified that on
the 15th day of September, 1889, he went into the back
room of Thurman's school-house, in O'Brien, Suwannee
county, Florida, and that he there saw the defendants play-
ing cards, and that he saw "corn" on the bench on which

defendants were playing; that they were passing the corn. from one to the other, and that he saw under the bench where Sapp was sitting a hat containing some corn and two dollars in silver money; that there were two doors to the room, and that the side door was closed, and the partition door was open, and that he remained in the room where they were playing about five minutes. Upon cross-examination, witness stated that he did not see defendants betting with each other, nor gambling; that he did not see or hear any betting or gambling. This was the whole of the evidence for the State.

One Bynum, for defence, testified that he saw the defendants playing cards at the time and place mentioned above; that he went in the house with defendants when they first entered it, but left, and returned in about ten minutes, when he found defendants playing; that they seemed to be playing for amusement only, and that he did not see or hear them betting or in any other way gambling with each other, and that he did not see any money in the house. The defendants, Oder and Sapp, in their statement to the jury, admitted that they and Barrow, the other defendant, were playing cards at O'Brien, September 15, 1889, but say that the game was played for amusement only, and that they did not bet with each other, or in any other way gamble.

The defendants were indicted under the last clause of Section 1, Chapter 3764, act of June 7, 1887, entitled: "An Act to Suppress Gambling-Houses and Gambling," which is as follows: "Or if any person or persons shall play, or engage in any game of cards, keno, roulette, faro or other game of chance, at any place, by any device whatsoever, for money or other things of value, * *." The first clause of this section of the statute applies to parties keeping houses, booths, &c., for the purpose of gambling. The

fourth section of the act provides : " That if any of the implements, devices or apparatus commonly used in games of chance, usually played in gambling-houses or by gamblers, are found in any house, room, booth, shelter or other place, it shall be *prima facie* evidence that the said house, room or place, where the same are found, is kept for the purpose of gambling," but it does not apply to that clause of the section under which the defendants were convicted, and consequently the " corn " used by the defendants could not be taken as *prima facie* evidence that they were gambling, because the statute does not make even the implements, &c., usually used for gambling by gamblers *prima facie* evidence of gambling in any place not kept for gambling purposes. In this case, the evidence does not show that the house in which the game of cards was played, was kept for the purpose of gambling ; but suppose it did, and suppose that " corn " is an implement, device or anything else used in gambling, that does not alter the case, because the Court cannot judicially take notice that " corn " is an implement or device used by gamblers. To make such implements, &c., *prima facie* evidence, it is incumbent upon the State to prove that they are instruments usually used by gamblers in gambling.

And now, barring the suspicious circumstance of the hat under the bench with the corn and the money in it, where is the evidence in the case to convict any one of the defendants ? It was the duty of the State to prove the guilt of the defendants beyond a reasonable doubt, in order to warrant a conviction.

The fact that the defendants were using corn in the game and that there was a hat under the bench with corn and two dollars in it, does not show a case of gambling beyond a reasonable doubt, even if the defendants had introduced

no evidence.    The  only witness for the State testified that he neither  saw nor heard  any betting  or gambling  by the defendants.

Under the conclusion we have come to, we do not intend to  impute to the  jury any improper motive  in arriving at their   verdict—there  is  nothing in the  case showing  such improper motive—all that  we say is, that the evidence  in the case is not sufficient to sustain the verdict, and for  this reason the judgment is reversed, and the cause is remanded with directions for further proceedings not inconsistent with this opinion.